Our third case this morning is number 172107, Imperium IP Holdings v. Samsung Electronics Co., Ltd. Our third case this Good morning, Your Honors. May it please the Court. I was at the trial and I'd like to begin by answering some of the questions that have gone unanswered this morning. The first relates to the introduction of the enablement jury instruction. That occurred after the jury charge conference. This was not anything that was brought up at the jury charge conference. Therefore, the sum total of Samsung's objection to it can be found on A12312 with the single sentence that it's contrary to law. What's the matter with the objection? I'm sorry, Your Honor. What's the matter with the objection? What's the matter with the objection is that it doesn't identify what their absolute issue is. They simply say that that statement is contrary to law. The statement is not contrary to law. How do you say it's not contrary to law? I'm sorry, Your Honor. Yeah, how is it not contrary to law? Because it's not contrary to law because the fundamental statement that there must be enablement exists. That exists. What Samsung is really asking for is a second sentence afterward, Your Honor, that says, but in the case of a United States patent, that is presumptively, that is presumed to be enabled. It's not just that there's something missing in the instruction. The instruction misstates the law by saying that they have to prove enablement by clear and convincing evidence. That's what the instruction said, didn't it? I disagree, Your Honor, but if the court is of the assumption that that is a statement. They said that? If the court is of the assumption. Where do we find the instruction? I'm sorry, Your Honor? Where's the instruction in the appendix? I'm confused by the question. Do you disagree that the court said they had to prove it by clear and convincing evidence, or do you disagree that that matters? No, I believe that they have to prove by clear and convincing evidence that the invention is invalid. Yeah, but that's not what the question was. But they have to do it with something that's enabled. Where's the instruction that we're talking about? Do you have a joint appendix citation that we can look at and let's read the words together? Yes, Your Honor. I understood your briefing. A1241037. Which volume is this? A1241037. Your Honor, it is quoted by the court in its decision on A60. It sets out a quote citing the docket number and pages at the bottom of A60. Thank you. Okay. It says Samsung must prove by clear and convincing evidence that this single item of prior art must enable. Right? Correct, Your Honor. That's what it says. But I believe that— That's wrong, isn't it? If the court is of the assumption— Is that wrong or not? I disagree that it's wrong, Your Honor. I believe that because the obligation for the proof is on the clear and convincing component. That's where their burden rests. That to prove by clear and convincing evidence, they must use something that is enabled. Not that they must prove that it's enabled. They must use something that is enabled. But if the— I understand, Your Honor. If the court disagrees, obviously we move to the Z4 analysis we've heard about already. Now, one thing to note, of course, is that Samsung in its briefing glosses over the first prong of the Z4 analysis. The very significant that the charge as a whole creates substantial and ineradicable doubt as to how the jury was instructed. This is one component of a 26-page jury charge. One very small piece that was not— I would like to pass that and go to a question that we discussed with your friend on the other side, and at least that I was not sure. In the record, and I don't think this is actually—I'm not sure whether it's in the joint appendix, and I want you to focus on the closing argument. There was a question about whether counsel for Samsung said, enablement of Johnson is not an issue and that's undisputed. Were those—was that statement made? Yes. In fact, I was at the close. I gave the closing argument. Wait, do you have the transcript in front of you? He said, Johnson gives extensive details on how to build the system. You could build it easily. You could enable it. Both Johnson and Hashimoto are issued patents. The patent examiner considered them enabled. There's no question about that. They're anticipatory references. So that doesn't really say that it's undisputed between the parties. There's no question that the examiner thought that they were enabled. And there's no question that that was the only evidence or indication that the jury had. Your Honor had referenced earlier testimony from Dr. Wright as indicating that he was addressing enablement, and he was not. Enablement is not part of any part of Dr. Wright's expert report. That excerpt that Samsung has talked about here, Your Honor, was part of a larger continuum of a discussion about the 884 patent and the elements of each of the pieces of the prior art, not whether the prior art was enabled itself. Had that been a discussion about the prior art being enabled, Samsung could have. Excuse me. Even the trial court pointed to Dr. Wright's testimony and specifically pointed out that Dr. Wright testified that although Johnson mentioned the concept of flickerless mode, it does not explain how to achieve this mode. How does that not relate to enablement? Because the broader context at that point in time, Your Honor, is about the missing elements as it relates to the 884 patent, not to enablement. Indeed, enablement has never been an issue in this case. At no point in time, it wasn't mentioned in the opening by either party. It wasn't mentioned in the close by me at all. Dr. Wright doesn't use the word enablement. His expert report doesn't include the concept of enablement. Had that been a discussion of enablement as it's being cast today by Samsung, Samsung would have stood up and would have objected to Dr. Wright speaking outside the scope of his expert report. It would have asked for a clarification to the jury on the issue. It would have undoubtedly asked to strike that portion of his testimony. None of that happened. The appellate attorneys are casting this as something related to enablement as a concept. But the trial attorneys at the time understood Phil well in the broader concept that he was speaking directly. So I understand that the sequence of events was that at the time that testimony occurred, they didn't have any idea that there was going to be an instruction of the sort that actually ended up being given. So why would they stand up and say there is no enablement issue? They should have rightly assumed at that point that there wasn't going to be an instruction like this, right? Because, Your Honor, at that point in time, Dr. Wright wasn't speaking to enablement. He was speaking to the idea of the appellate. The question is how the jury might have understood him to have been speaking once the judge said what the judge said in the instruction by adding it later in time. That presupposes that they appreciate that what he has just talked about is enablement. There has been no dots connected, not by Imperium, not by Imperium's witness. There has been no dots connected to that statement and anything relating to this concept of enablement, which they hear for the first time. Why didn't you support Samsung's objection when they said objection, you're putting the burden on the wrong party and there is no issue of enablement here? Why didn't you stand up and say, Your Honor, we're not contesting enablement? Because their objection wasn't that, Your Honor. They said it was contrary to law. And as I've indicated, I don't believe that that statement was contrary to law. Now, I understand that the court may... You liked the instruction. I understand, Your Honor, that... You liked the instruction. You thought the instruction was the right thing to do. No, Your Honor. No? No, it wasn't an issue for us, one way or the other. We didn't bring in... Why didn't you say that? No, you're implying nefarious actions that didn't exist, Your Honor. No. And that brings us to Z4, which is what really did this have as an impact? Would you mind, since time is short, getting to the other aspect of the 8-4 argument, namely that in the single page in the transcript, I guess it's, yes, 12-218, where Dr. Wright addresses the Johnson reference, how does that create an issue as to which the jury could reasonably find lack of anticipation? Of course, Your Honor. Dr. Wright speaks in the ultimate conclusion to the idea that nothing he has seen or heard during the trial has changed his view about the validity of the patents. That conclusion is sufficient. That is enough, but it's even more than enough, because the burden continues to rest the entire time with Samsung. And contrary to what was said about the cross-examination, at A11994, Dr. Nykerk is, in fact, cross-examined. And not just about this. He's cross-examined multiple times. Are you agreeing that Dr. Wright didn't rebut the testimony? I'm sorry? Are you agreeing that Dr. Wright did not address or rebut Dr. Nykerk's testimony about Johnson? No, he did, Your Honor. He did it twice. He did it by indicating that there was a difference in language between the two. And although counsel for the other side has indicated that that's not a difference at all, the answer is that's absolutely what the case is about, understanding the relationship between the prior art and the claim language. They're not the same, and he identified that. I'm sorry, but you just shifted to the prior art versus the claims. On the specific point of whether, what is it called, integration time? Is that the phrase? Correct, Your Honor. Is or is not the same as the other two terms? Did you have evidence that said, oh, those are actually quite different? Dr. Wright's testimony is they're not the same, Your Honor. Point me to where Dr. Wright said those are, in fact, different. Those have different meanings. Your Honor, I'm going to go look for it, but I believe it's A12221. Oh, that's the same page. Well, he didn't say that they were. He just said that Judge Johnson didn't use the integration time terminology. He didn't say that that terminology has a substantively different meaning from the terminology that Johnson did use. He doesn't need to say that, Your Honor. No, no. There are plenty of other bases, by the way, for which this jury could reach a conclusion that the burden had been met. The burden never shifts. It's not that the evidence is out there. And as Judge O'Malley indicated, there is other cross-examination factors involved in here as well. All right. What are those? I see a reference in the brief that he happened to know, or he did know, the Johnson inventors. What else? Well, any way he testifies, Your Honor, the demeanor he undertakes in answering the questions, the approach he takes when positing his different opinions, all of that, along with the other cross-examination questions, can be used as a corpus for the jurors to understand the witness's credibility. But you didn't really point us to anything like that. You didn't say, look how obvious it is that he was avoiding a question, or look how he was self-contradictory, or look how he admitted that he didn't have expertise in a particular area. Those are the kinds of things that usually we see when we say, the jury had the right to not believe him at all, even in the absence of contrary testimony. So what do you point us to? Your Honor, there are a number of different pieces of art that were testified to during that entire cross-examination. The responses to any of those could have implicated the veracity of Dr. Nykerk's testimony. We're seeking to crack open the jury deliberation process here by focusing on the very specific piece of art when, in fact, it's the totality of his cross-examination that defines him as a witness and his credibility as a witness. And that needs to remain primary. The Starr Scientific case makes it clear that the jurors are permitted to evaluate and weigh each witness separately and their credibility separately. There is no obligation that they adopt wholesale everything he says. He was challenged. He was challenged as a witness. He was challenged on these issues. Those are bases upon which a credible juror, a legitimate juror, a juror focused on the evidence, can, in fact, reach a conclusion that Dr. Nykerk was inaccurate. Dr. Nykerk's position was addressed multiple times. Your Honor, I see you have one minute left. May I address briefly, if the Court will permit, one of Imperium's cross-appeal issues? I'm happy to continue talking about the issues. You have a minute left. You can do whatever you want. Your Honors, with respect to the post-trial running royalty, that is an issue of first impression for this Court, the impact of a post-grant proceeding that has been incompleted on the presumption of validity during a reasonable royalty negotiation. I ask that this Court evaluate whether it wants to include the questions of validity or a possible attack on validity during those components of the negotiation. What has happened here, based on what the lower court has done, is that it has indicated that it is including as a factor mitigating against Imperium's royalty rate the ongoing IPR of the 029 patent. Not only does it apply that as a discount factor to the 029 patent in the hypothetical negotiation, it also applies it to the 884 patent, which, of course, was not the subject of the IPR. Mr. Fish, we're out of time. Thank you. I'm sorry, Your Honor? We're out of time. Thank you. Thank you, Your Honor. Very quickly, Your Honor, if I could, first on the prejudicial nature of shifting the burden from one party to another. At best, because we had not addressed it in our opening, Dr. Wright certainly made some noises that the jury might have thought went to enablement. We might have had a jury in equipoise. This instruction didn't just shift the burden from them to us. It said that we bore the burden by clear and convincing evidence. The standard is if it could have affected the outcome, there has to be a new trial. The court cannot know that it did not affect the outcome on that record. In terms of the actual JMAL motion, the Webster case, which we cite in the yellow brief, if I can pull this up. This is a Fifth Circuit case. It's cited at page four. It stands for the proposition that when juries must decide, they may decide what weight to give expert witnesses. They are not at liberty to disregard the uncontradicted, unimpeached testimony of an expert witness where the testimony bears on technical questions beyond the competence of the jury determination. What's your response to Mr. Fischer's argument that we can't assess that in terms of what their credibility assessment might have been unless we look at all of his testimony as a whole? There could have been other things he said with respect to the other patents that the jury just felt were not credible or that reduced his credibility with respect to anything he said. Your Honor, I believe that that rule that you've articulated, if that's the rule, means that Webster means nothing. Because in every trial, the party that won the victory can say, well, we don't know why the jury didn't credit them. They may have felt that their demeanor was somehow offensive. Unless you can point to something that impeached or contradicted the expert's testimony, the jury is just not free to disregard it. But if you were to say that it could be anything that they found about it. But in Webster, there was really only one issue that the expert was talking about. It's not a question of where he was discussing multiple patents and that his credibility with respect to those other patents might have affected his credibility here. Your Honor, they have pointed to nothing other than the simple fact that Dr. Nykerk knew of one of the many inventors on the Johnson patent. And that is not a basis for bias. Is it knew of or knew? Knew in person? Knew in person. I think we're out of time. Thank you very much.